**Diane SALA, Plaintiff-Appellant,**

v.

**COUNTY OF SUFFOLK, Philip F. Corso, Sheriff of the County of Suffolk, and Loraine Weeks, Defendants-Appellees.**

**No. 1056. Docket 79–7009.**

United States Court of Appeals, Second Circuit.

Argued May 17, 1979.

Decided Aug. 17, 1979.

Bennett E. Aron, West Hempstead, N. Y., for plaintiff-appellant.

Edward J. Hart, Merrick, N. Y. (Curtis, Hart & Zaklukiewicz, Merrick, N. Y., Wade Thomas Dempsey, Merrick, N. Y., of counsel), for defendants-appellees.

Before KAUFMAN, Chief Judge, SMITH and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

In this case an unfortunate series of circumstances and the mechanical application of an ill-considered county policy, since abandoned, led to an embarrassing strip search of a woman. Plaintiff Diane Sala had been accused by an individual of

harassment, a minor violation in New York's hierarchy of offenses against the public weal, punishable by no more than fifteen days in jail. The summons, however, was mailed to the wrong address, and a warrant was issued for Sala's arrest because of her failure to respond to the misdelivered summons. When Sala was informed that a warrant had been issued, she voluntarily appeared at the Suffolk County Police Department. She was handcuffed and then searched by defendant Loraine Weeks, a correction officer. A "strip search," which included visual inspection of the genital and anal areas, but no contact, was conducted. This procedure was followed with all persons delivered to the custody of the Suffolk County Sheriff's Department at the Suffolk County District Court Detention Facility.

Plaintiff sued in the United States District Court for the Eastern District of New York for violation of her civil rights, 42 U.S.C. § 1983. The court, George C. Pratt, *Judge,* directed a verdict for the individual defendants, Weeks and County Sheriff Philip E. Corso, and for the County, because of the absence of any proof of a lack of good faith, but granted injunctive relief to pre-arraignment detainees charged with petty offenses, attorney's fees of $15,000 and expenses of trial in the amount of $500 to plaintiff.

No appeal was taken from the grant of injunctive relief, the practice attacked having been abandoned by the County.[1] The award of attorney's fees and expenses of trial was appealed, but the appeal was abandoned, and this court dismissed it on February 23, 1979. We have before us only plaintiff Sala's appeal from the dismissal of her action for damages. We find no error in the result reached and therefore affirm the judgment.

The District Court properly directed a verdict for the individual defendants. The Supreme Court has enunciated a limited "good faith" official immunity to actions for damages brought under § 1983. See, *e. g., Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The immunity standard requires that an individual defendant have acted in both "objective" and "subjective" good faith. *Id.* at 321–22, 95 S.Ct. 992. The objective element of the test would deny immunity to the defendants if "the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm." *Procunier v. Navarette, supra,* 434 U.S. at 562, 98 S.Ct. at 860. The search of plaintiff Sala was conducted on October 9, 1974. We have neither discovered nor been directed to any case which, prior to that time, had held such a search to be a violation of any constitutional right. If the search here did infringe any of Sala's constitutional rights,[2] such rights were not "clearly established" at the time of the search.

The subjective element of the good faith test is also satisfied. Sala did not allege that the individual defendants acted with malice, nor was there any proof that they intended "to deprive the plaintiff of a constitutional right or to cause [her] 'other injury.'" *Id.* at 566, 98 S.Ct. at 862.

We therefore affirm the dismissal of the damage claims against Corso and Weeks.

Sala's claim against the County presents a more difficult question. Although § 1983 "creates a species of tort

---

1. Our resolution of the non-constitutional immunity issue makes it unnecessary for us to determine or to remand for reconsideration the question whether the County's strip search policy was unconstitutional in light of the Supreme Court's recent decision in *Bell v. Wolfish,* —— U.S. ——, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Unlike the petitioners in *Wolfish,* Sala had not yet been arraigned and therefore

there had been no judicial determination that she should be committed to a detention facility. *Compare, id.* at —— n. 28, ——, 99 S.Ct. 1861. We intimate no opinion as to whether this factual distinction has any constitutional significance.

2. See note 1, *supra.*

liability that on its face admits of no immunities," *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976), the Supreme Court has held that the statute "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Id.* at 418, 96 S.Ct. at 989. Such a reading has required the Court to "address how best to reconcile the plaintiff's right to compensation with the need to protect the decision-making processes of an executive department." *Butz v. Economou,* 438 U.S. 478, 503, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). The result of this balancing has been the formulation of a doctrine of official immunity, which we applied above, that provides government officials with varying degrees of protection against individual liability.

Both *Monell v. Department of Social Services,* 436 U.S. 658, 701, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Turpin v. Mailet,* 579 F.2d 152, 166 (2d Cir.) (*en banc*), *vacated on other grounds,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978), *decision on remand,* 591 F.2d 426 (2d Cir. 1979) (*en banc*), reserved decision on the scope of any municipal immunity against an action for damages caused by a deprivation of constitutional rights. Sala's claim against the County for damages requires that we begin to deal with this issue.[3]

The possibility of municipal liability under § 1983 after *Monell* implicates a number of the same competing concerns which the courts have had to weigh in the cases involving personal liability under § 1983. Our path in balancing these considerations is directed by the Supreme Court's declaration that its decision in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), "was intended to guide the federal courts in resolving this tension [between the individual's right to recover and the public interest in effective government decision

making] in the myriad factual situations in which it might arise." *Butz v. Economou, supra,* 438 U.S. at 503, 98 S.Ct. at 2909.

In *Scheuer, supra,* 416 U.S. at 240, 94 S.Ct. at 1688, the Court noted that two "mutually dependent rationales" form the basis of the doctrine of official immunity from liability:

(1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.

The first of these concerns is in large part peculiar to the context of individual official immunity. The sense of injustice felt at the prospect of holding an individual official liable in damages when he acted reasonably and in good faith is greatly diminished when the liability is to be affixed to a municipality, even if its responsible officials acted reasonably in the light of the then-existing law. Although "we are not insensitive to the financial plight of local governmental bodies" and wish to avoid "needlessly expand[ing] recovery at the expense of already overburdened taxpayers," *Turpin v. Mailet, supra,* 579 F.2d at 165, "fiscal considerations alone cannot stand in the way of the vindication of constitutional rights." *Id.* at 165 n. 38.

■ But the second rationale discussed in *Scheuer* retains more relevance in the context of municipal liability. The fear that the possibility of liability will unduly inhibit "the vigorous exercise of official authority," *Butz v. Economou, supra,* 438 U.S. at 506, 98 S.Ct. at 2911, is central to the concept of governmental immunity. As the Court said in *Scheuer, supra,* 416 U.S. at 241, 94 S.Ct. at 1689 "one policy consideration seems to

---

**3.** Several other courts have ruled on this question, with most of the recent cases holding that a good faith immunity applies to municipalities as well as to government officials. *E. g., Owen v. City of Independence, Missouri,* 589 F.2d 335 (8th Cir. 1978); *Ohland v. City of Montpelier,*

467 F.Supp. 324 (D.Vt.1979); *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978) (dictum). *Contra, Shuman v. City of Philadelphia,* 470 F.Supp. 449 (1979); *see Hander v. San Jacinto Junior College,* 519 F.2d 273, 277 n. 1 (5th Cir. 1975).

pervade the analysis: the public interest requires decisions and action to enforce laws for the protection of the public." Although the detrimental effect that unforeseeable municipal liability may have on forceful decision making may be less direct than in the case of personal liability, it is clear that the threat of such liability may inhibit public officials from "mak[ing] decisions when they are needed or . . . act[ing] to implement decisions when they are made." *Id.* at 241–42, 94 S.Ct. at 1689.

The protection of constitutional rights requires that municipalities, in the formulation of governmental "policies" and "customs," exercise their authority carefully and with the utmost concern for the effect which their decisions will have upon individuals. The role of municipal legal counsel in advising those responsible for decision making as to the legality of proposed actions is of course crucial.[4] But there are situations in which even the most able counsel will not be able to foretell the constitutional invalidity of a municipal policy. The Supreme Court has recognized in other context that, where a decision "establish[es] a new principle of law," it may be appropriate to give such a decision only prospective application. See *Chevron Oil Co. v. Huson,* 404 U.S. 97, 105–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Such a rule strikes a proper balance in determining the scope of municipal liability under § 1983, at least where, as here, there is no evidence that any person responsible for formulating the municipal policy acted with malice or in bad faith. *See also, Cox v. Cook,* 420 U.S.

734, 736, 95 S.Ct. 1237, 43 L.Ed.2d 587 (1975) (per curiam).

Where prior law does not suggest that a municipal policy is constitutionally infirm, it cannot be said in any meaningful sense that the municipality has been "at fault" in adopting that policy, and we do not believe that § 1983, enacted by a Congress accustomed to nearly absolute municipal immunity,[5] should be read to implement a doctrine of liability without fault.[6] After all, "it is not a tort for government to govern." *Dalehite v. United States,* 346 U.S. 15, 57, 73 S.Ct. 956, 979, 97 L.Ed. 1427 (1953) (Jackson, *J.,* dissenting), quoted with approval in *Scheuer, supra,* 416 U.S. at 241, 94 S.Ct. 1683, at 1689.

Our decision is a narrow one. The facts of this case present a situation wherein although the practice was insensitive, demeaning and stupid, there was no evidence of bad faith on the part of anyone charged with formulating or implementing the municipal policy, and the case law as of the time of the incident involved here did not suggest that the practice of strip searching which apparently had long been followed by many governmental bodies, was unconstitutional. The practice has now been abandoned by the County. In such a situation, the public interest in careful, but forceful, governmental decision making requires that a municipality be afforded immunity from liability for damages under § 1983.

The judgment of the District Court is affirmed.

---

4. Section 501(1) of the County Law of the State of New York provides, in relevant part:

   The county attorney shall be the legal advisor to the board of supervisors and every officer whose compensation is paid from county funds in all matters involving an official act of a civil nature.

5. At common law, municipalities were for a time accorded the same absolute immunity from tort liability which states possessed. By 1871, when the predecessor of § 1983 was enacted, some states, such as New York, had recognized a distinction between "governmental" and "proprietary" acts, imposing liability only for the latter. *Monell v. Department of*

*Social Services,* 436 U.S. 658, 720–21, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Rehnquist, *J.,* dissenting). *See Bailey v. City of New York,* 3 Hill 531 (N.Y.1842); *see generally,* W. Prosser, The Law of Torts at 978–79 (4th ed. 1971).

6. *Cf. Monell v. Department of Social Services,* 436 U.S. 658, 681 n. 40, 98 S.Ct. 2018, 2031, 56 L.Ed.2d 611 (1978) (Congress rejected the Sherman amendment to the Civil Rights Act of 1871, which would have "imposed damages without regard to whether a local government was in any way at fault for the breach of the peace for which it was to be held for damages.")