Lucy N. LOGAN, Plaintiff,

v.

Norris SHEALY et al., Defendants.

Civ. A. No. 80–210–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Sept. 30, 1980.

Thomas A. Guidoboni, Bonner, Thompson, O'Connell, Gaynes & Middlekauff, McLean, Va., for plaintiff.

Albert J. Ahern, Jr., Bailey's Crossroads, Va., for John Doe, Richard Roe and Jane Doe.

William D. Dolan, III, Arlington, Va., for Burroughs.

Claude M. Hilton, Arlington, Va., for Clements & Gondles.

Jerry K. Emrich, Arlington, Va., for Shortt, Sheally, Johnson and Vance, Arlington Cty.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, Senior District Judge.

This § 1983 suit for damages and for declaratory and injunctive relief for violation of plaintiff's Constitutional rights by various present and former officers of Arlington County, Virginia grew out of her arrest and commitment for driving while intoxicated, and her unreasonable refusal to take a breathalyzer test as provided for by § 18.2–268(c), (n) of the *Code of Virginia*.

She claims she was denied her Constitutional right to the assistance of counsel and to be free from unreasonable searches, and has asked this Court to permanently enjoin and restrain the defendants from maintaining and/or enforcing any policy or practice which denies those charged with driving while intoxicated from consulting with their attorney upon request—and which subjects those so charged and committed to being strip–searched, unless the Sheriff or his deputies have reasonable grounds to believe that contraband and/or weapons are being concealed on such person.

The case was heard on the merits, and the claim for damages was dismissed—the claim for declaratory and injunctive relief was deferred pending further briefing and argument of counsel—those briefs have now been filed and considered.

There was little, if any, dispute as to what happened on the day in question:

The plaintiff admits that she had had two drinks shortly prior to the time (about 7:30 p. m.) she became involved in a two–car accident just beyond the intersection of Courthouse Road and Arlington Boulevard.

Officer Shortt, the investigating police officer, after interviewing and observing the plaintiff, suspected she might be under the influence of intoxicating beverages.

He gave her the requisite field tests and told her that he would have to take her to the Violations Bureau for the required breathalyzer test.

She insisted upon first calling her lawyer friend, Lorelei Haig, whom she had

just dropped off a few minutes before the accident.

The officer would not let her leave the scene to make the call—after some 30 minutes, she was taken to the Violations Bureau in one of the police patrol cars—her automobile driven by the police followed.

They arrived at the Violations Bureau at about 8:15 p. m.—Officer Shortt got there about 8:20 p. m.

He again advised her of her rights and obligations under Virginia's "implied consent" law, and made arrangements for one of the more experienced police officers to administer the required breathalyzer test.

The plaintiff again insisted upon talking to Lorelei Haig before deciding whether to take the test—she said she wanted somebody there on her side.

She was not allowed to make the requested telephone call.

When she couldn't or wouldn't make up her mind, she was given a copy of §§ 18.2–266–68 of the *Virginia Code* to read.

When she kept stalling for the better part of an hour, Officer Shortt had the Magistrate on duty advise her of her rights and obligations under the law.

When the Magistrate advised her of the law requiring the breathalyzer test, and the penalty for refusal (revocation of driver's license for 90 days), she decided to take the test.

Instead of so doing, she stalled for another ten minutes or so.

Officer Shortt (at approximately 9:55 p. m.) then obtained warrants from Magistrate Vance charging her with DWI and unreasonable refusal under *Virginia Code* §§ 18.2–266–68.

The warrants were served upon her immediately—and she asked the Magistrate to release her on her personal bond—he told her that he would do so but that she would have to be detained for four hours or until some responsible person could come and get her—she said she could get someone to come if she could use the telephone.

The Magistrate wrote on the commitment papers that she be permitted to use the telephone to call her lawyer friend.

She was taken to the Sheriff's office at approximately 10:00 o'clock—a matron inventoried her personal property and took her to one of the holding cells where she was strip–searched for concealed weapons.

The strip–search was conducted in private, with no one being present but the matron and the plaintiff. She was asked to take off her clothes, one at a time, to hand them to the matron, and to turn around for visual inspection. She did so and her clothes were immediately returned to her.

After the strip–search had been completed, which took less than five minutes, the plaintiff was allowed to use the telephone. She called her lawyer friend who came and got her about an hour later.

The plaintiff is a practicing attorney in Arlington and was a former Assistant Commonwealth Attorney—she knew one of the Magistrates.

The record is silent as to whether she knew any of the policemen or deputy sheriffs who were on duty that night, or whether any of them knew her.

■ No one has a Constitutional right to leave the scene of an accident to call their lawyer while their sobriety is being checked—or to have their lawyer present or to talk with her on the telephone in re whether or not she should take the required breathalyzer or blood test.

The plaintiff knew, or should have known, as a practicing and former Assistant Commonwealth Attorney, that such blood or breath test must be taken within two hours from the time of the alleged offense.

The accident in question occurred at about 7:30 p. m. It took her until almost 10:00 o'clock to make up her mind as to whether or not she was going to take the breathalyzer test, after having been fully advised by both the arresting officer and

the Magistrate of the law requiring that a blood or breath test be taken and the penalty for refusing.

The warrants for her arrest for DWI and unreasonable refusal were issued and served upon her at approximately 10:00 p.m.

■ One's Sixth Amendment right to counsel does not accrue immediately on arrest pursuant to a warrant. *See United States v. DuVall* (2d Cir. 1976) 537 F.2d at p. 15–it does not accrue until "at least at, or after the time judicial proceedings have been initiated–whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *See Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

■ No judicial proceedings were pending against Ms. Logan when she requested the investigating police officer to allow her to call her lawyer friend–she was allowed to call her lawyer within five or ten minutes from the time she was formally charged.

The plaintiff conceded that Officer Shortt had probable cause to arrest her on the night in question. Her Sixth Amendment right to counsel on the night in question was not abridged–and the Court so holds.

■ The plaintiff does not question that the Sheriff of Arlington County adopted the policy in 1974–1975 (after one of his deputies had been shot by a misdemeanant who had not been strip–searched), that all persons committed to his custody would be strip–searched for concealed weapons and/or contraband–or that the policy had been administered on a non–discriminatory basis since that date. She simply points out that she had been in custody [of the arresting officer] unsearched for more than an hour before she was strip–searched [by the matron]–that she came into contact with no one who was not a law enforcement officer–and that she certainly did not expect to be detained–thus she had no reason to attempt to smuggle contraband into the jail. She further points out that the cell in which she was held could have been constantly monitored by the correctional officers at the jail if they had any reason to believe that she might have any weapons or contraband concealed on her person.

The Supreme Court of the United States, in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in dealing with the question of whether visual body cavity inspections as contemplated by the Metropolitan Correctional Center can ever be conducted on less than probable cause held:

"Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can."

In reaching that conclusion, Justice Rehnquist said:

"Assuming for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility, we nonetheless conclude that these searches [strip] do not violate that Amendment. The Fourth Amendment prohibits only unreasonable searches, and under the circumstances, we do not believe that these searches are unreasonable."

The plaintiff does not question that the Sheriff's "strip search" policy was adopted for the protection of the inmates and personnel in the jail or suggest that it was employed with an intent to punish the pretrial detainees housed therein. She simply argues that those committed for Driving While Intoxicated need not be strip–searched, unless the jailer has reason to believe they are carrying concealed weapons.

She offered no evidence to support her contention that intoxicated detainees should be treated differently than other detainees.

As was noted in *Bell, supra*:

"A detention facility is a unique place fraught with serious security dangers.

\* \* \* \* \* \*

"Smuggling of ... weapons, and other contraband is all too common an occurrence.

\* \* \* \* \* \*

"Ensuring security and order at the institution, is a permissible non–punitive objective whether the facility houses pretrial detainees, convicted inmates or both."

The burden is on the plaintiff of showing that the Sheriff of Arlington County has exaggerated his response to the genuine security consideration that activated his strip–search practice.

She has failed to so prove–her cited cases were concerned with minor traffic offenses, punishable by fine only–her charge was more than a minor traffic offense. DWI is a Class 2 misdemeanor, punishable by confinement for up to six months and a fine of $500.00, or both.

Unreasonable refusal (§ 18.2–268) calls for mandatory suspension of a driver's license for 90 days for the first offense, and up to 6 months for the second and subsequent offenses.

Although the detention center in *Bell* was a short–term federal custodial facility, the Supreme Court's decision therein is binding on all state as well as federal custodial facilities.

Whether the plaintiff should have been committed to the custody of the Sheriff for four hours, or until some responsible person came to get her–need not be further answered (enough was said by the Court during the trial). After she was lawfully committed by the Magistrate on duty to the custody of the Sheriff, he was duty–bound to treat her the same as he treated all other detainees. The deputy sheriff [matron] did just that.

Therefore, her Fourth Amendment right to be free from unreasonable searches has not been abridged. She was lawfully strip–searched on the night in question, and

The Court so holds.

Her prayer that the Sheriff of Arlington County be permanently enjoined from strip–searching those committed to his custody on the charge of Driving While Intoxicated unless he has reason to believe they are carrying concealed weapons on their person must be DENIED, and

IT IS SO ORDERED.

The Clerk will send a copy of this Memorandum Opinion and Order to all counsel of record.