CLEMENTS ET AL. *v.* LOGAN

No. A–480.   Decided December 9, 1981

JUSTICE REHNQUIST, Circuit Justice.

Applicants, a former Sheriff of Arlington County, Va., and a Deputy Sheriff, ask that I stay the mandate of the United States Court of Appeals for the Fourth Circuit remanding this case to the District Court following the Court of Appeals' holding that a policy of strip-searches implemented at the Arlington County Detention Center is unconstitutional.   This request was denied by THE CHIEF JUSTICE, and a reapplication has been addressed to me.   For the reasons that follow, I have referred the reapplication to the full Court at its next regularly scheduled Conference and I have temporarily stayed the mandate of the Court of Appeals pending the Court's disposition of the stay request.

The events that prompted this suit began with respondent's arrest on suspicion of driving while intoxicated follow-

ing a two-car collision. Respondent failed several field tests for intoxication, and she was taken by police cruiser to the Arlington County Detention Center for administration of a breath-analysis examination. Respondent, an attorney, refused to take the test until allowed to telephone a friend who was also an attorney. She persisted in this demand despite being informed by the investigating officer and a Magistrate before whom she appeared that she had no right to contact an attorney under Virginia's implied-consent statute, Va. Code § 18.2–268 (1975 and Supp. 1981). The Magistrate issued two warrants against respondent, one for driving while intoxicated and the other for refusing to submit to a breath-analysis test.[1] The Magistrate authorized respondent's release on her own recognizance on the condition that a responsible person come to the Detention Center to assume custody. The Magistrate's office did not have a phone available for respondent's use, but she was informed that she could make a call upon commitment to jail. The arresting officer then transferred custody of respondent to applicant Carol Sachtleben, a Deputy Sheriff.

Prior to respondent's arrest, applicant Clements, at that time the Sheriff, had instituted a policy requiring deputies to conduct visual strip-searches of all persons held at the Center in order to discover whether weapons or contraband were being concealed. This policy was adopted after the shooting of a deputy by a misdemeanant who had not been strip-searched. Pursuant to this policy, applicant Sachtleben first inventoried respondent's personal property and then took her

---

[1] Under Virginia law, driving while intoxicated is a Class 2 misdemeanor, punishable by imprisonment for up to six months and a fine of $500. Va. Code §§ 18.2–270, 18.2–11 (1975). Unreasonable refusal to submit to a breath-analysis test is punishable as a first offense by mandatory suspension of the driver's license for 90 days. Repeat offenses are punishable by imprisonment for six months. § 18.2–268(n).

to a holding cell where she conducted a visual strip-search.[2] Respondent was then allowed to call her friend, and eventually was released into her friend's custody.

Respondent subsequently brought suit for damages and injunctive relief under 42 U. S. C. § 1983, alleging an assortment of constitutional violations. She complained of (1) denial of the assistance of counsel; (2) unjustified detention following establishment of the conditions of release; and (3) the Sheriff's policy of administering strip-searches of all persons held at the Detention Center without reasonable cause to suspect concealment of weapons or contraband. The complaint named as defendants the arresting officer, a correctional officer at the Detention Center, several Deputy Sheriffs (including applicant Sachtleben), three Magistrates, the Commonwealth Attorney for Arlington County, applicant Clements, the current Sheriff Gondles, and Arlington County. Several claims were dismissed prior to trial, directed verdicts were entered as to others in favor of the defendants, and after post-trial briefing, the District Court entered judgment for defendants on those claims that remained. *Logan* v. *Shealy*, 500 F. Supp. 502 (ED Va. 1980). In particular, the court held that the policy of conducting strip-searches did not violate the Fourth Amendment. *Id.*, at 506.

The Court of Appeals for the most part affirmed, but it reversed on the issue of strip-searches. *Logan* v. *Shealy*, 660 F. 2d 1007 (CA4 1981). The court purported to rely on the standard for judging the reasonableness of searches expressed in *Bell* v. *Wolfish*, 441 U. S. 520, 559 (1979), which requires consideration of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." The court concluded:

---

[2] Respondent was asked to remove her clothing, one garment at a time, to hand them to the deputy, and to turn around for visual inspection. Respondent complied and her clothes were immediately returned to her.

"On the undisputed and stipulated evidence, Logan's strip search bore no such discernible relationship to security needs at the Detention Center that, when balanced against the ultimate invasion of personal rights involved, it could reasonably be thought justified. At no time would Logan or similar detainees be intermingled with the general jail population; her offense, though not a minor traffic offense, was nevertheless one not commonly associated by its very nature with the possession of weapons or contraband; there was no cause in her specific case to believe that she might possess either; and when strip-searched, she had been at the Detention Center for one and one-half hours without even a pat-down search. An indiscriminate strip search policy routinely applied to detainees such as Logan along with all other detainees cannot be constitutionally justified simply on the basis of administrative ease in attending to security considerations." 660 F. 2d, at 1013.

The court remanded with directions to enter a permanent injunction against enforcement of the policy.[3] The court also reversed directed verdicts in favor of applicants and remanded with instructions that judgment be entered against them "for all damages determined by a jury to have been

---

[3] The jurisdiction of the Court of Appeals to order the issuance of a permanent injunction is, I think, open to serious question. Although respondent has suffered an injury sufficient to establish her standing to seek damages, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea* v. *Littleton*, 414 U. S. 488, 495–496 (1974). As *O'Shea* makes clear, standing to seek injunctive relief depends on a showing of "a real and immediate threat of repeated injury." *Id.*, at 496. Respondent has not alleged that she anticipates being arrested again and again subjected to a strip-search at the Arlington County Detention Center. Even if she had made such an allegation, it would "tak[e] us into the area of speculation and conjecture." *Id.*, at 497. See *Rizzo* v. *Goode*, 423 U. S. 362, 371–373 (1976).

proximately caused by the strip search, unless those defendants can establish before a jury their respective defenses of good faith immunity (or any others available to them) in accordance with [the court's] opinion." *Id.*, at 1014. Applicants unsuccessfully sought a stay from the Court of Appeals. A similar request was denied by the THE CHIEF JUSTICE, and the present reapplication was delivered to me on December 8, 1981. Without a stay, trial of the damages claims against applicants will commence on December 9.

Applicants for a stay bear a heavy burden of demonstrating the need for exercise of the equitable power conferred on a Circuit Justice by 28 U. S. C. § 2101(f). That burden is heavier still if the request for a stay has previously been denied by a Member of this Court. See, *e. g.*, *New York Times Co.* v. *Jascalevich*, 439 U. S. 1331, 1337 (1978) (MARSHALL, J., in chambers); *Republican State Central Committee* v. *The Ripon Society*, 409 U. S. 1222, 1227 (1972) (REHNQUIST, J., in chambers). While THE CHIEF JUSTICE is not entitled to a presumption that by virtue of his office he knows more law than the other Members of the Court, it is presumed that he knows at least as much, and his denial of relief "counsels circumspection." *Republican State Central Committee, supra*, at 1227.

After consideration of the reapplication and the response, I have concluded that the issues involved warrant consideration by the full Court. This opportunity will arise at the next regularly scheduled Conference on Friday, December 11. Nevertheless, that date is several days in the distance and, more importantly, the proceedings that applicants seek to stay will commence in the interim in the absence of a stay. As a result, I think it is incumbent on me to exercise my authority as Circuit Justice to determine how the matter shall remain until it can be considered by the full Court. See *Evans* v. *Atlantic Richfield Co.*, 429 U. S. 1334, 1335 (1976) (REHNQUIST, J., in chambers).

In my view, the decision of the Court of Appeals is so at odds with this Court's resolution of a similar issue in *Bell* v. *Wolfish, supra,* that its mandate ought to be stayed temporarily pending consideration by the full Court. *Bell* v. *Wolfish* was a class action initiated by inmates of a federally operated short-term detention facility challenging the constitutionality of numerous conditions of confinement and related administrative practices. The facility was primarily used to house persons charged with a crime but not yet brought to trial. One of the challenged practices was the requirement that inmates submit to a strip-search and visual inspection of their body cavities after every contact visit with someone from outside the institution. This Court ultimately held that under the circumstances, such searches were not unreasonable under the Fourth Amendment. 441 U. S., at 558–560. Rather, they were "reasonable responses . . . to legitimate security concerns," *id.*, at 561, and could be conducted in the absence of probable cause, *id.*, at 560.

The Court of Appeals recited from *Bell* v. *Wolfish* the general standard by which searches are judged under the Fourth Amendment, but it chose to ignore the Court's application of that standard to the practice of conducting strip-searches of persons detained after being charged with a crime. Respondent in this case was arrested and charged by a Magistrate with driving while intoxicated and unlawful refusal to submit to a breath-analysis examination.[4] The Magistrate authorized her release from the Detention Center only when a responsible individual arrived to take custody. Until that time, respondent remained officially under arrest and subject to those measures adopted for the maintenance of internal security at the jail. Her position was no different, for constitutional purposes, from the pretrial detainees in *Bell* v. *Wolfish.* If anything, the detainees in that case were subject to

---

[4] See n. 1, *supra.*

more onerous conditions, given the greater intrusiveness of a body-cavity search. The Court nevertheless upheld such searches "in the light of the central objective of prison administration, safeguarding institutional security." *Id.*, at 547.

The Court of Appeals gave little or no weight to that objective. The clear import of its decision is that strip-searches may not be conducted without probable cause to believe that the subject of the search possesses weapons or contraband. No such requirement attended the search policy upheld in *Bell* v. *Wolfish*, and indeed the Court expressly held that strip-searches need not be conditioned on probable cause. *Id.*, at 560. Nor was the result in *Bell* v. *Wolfish* predicated on a showing that searches were limited to those persons whose alleged offenses were "commonly associated by [their] very nature with the possession of weapons or contraband." 660 F. 2d, at 1013. In short, the Court of Appeals decision reads as if *Bell* v. *Wolfish* had never been decided. Much as that may have been the desire of the lower court, the decision is authoritative precedent and I believe it clearly dictates a contrary result in this case.

In view of the Court of Appeals' attempt to distinguish a decision of this Court which to me seems clearly applicable to the case before it, I believe there is substantial likelihood that the full Court will grant a stay pending disposition of the petition for certiorari. A delay in the proceedings until the Court has an opportunity to consider the application will not prejudice respondent, and it will forestall the expense and effort of a trial until the legal basis for further proceedings is clarified. Accordingly, the mandate of the Court of Appeals is hereby stayed temporarily, pending consideration of the application for a stay by the full Court at the next regularly scheduled Conference.