**Caroline DUFRIN, Plaintiff-Appellee,**

v.

**Oakland County Sheriff Johannes SPREEN, Defendant-Appellant.**

**No. 82–1002.**

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1983.

Decided July 29, 1983.

Rehearing and Rehearing En Banc Denied Nov. 7, 1983.

John F. Allen (argued), Troy, Mich., for defendant-appellant.

Michael Pitt (argued), Kelman, Loria, Downing, Schneider & Simpson, Detroit, Mich., for plaintiff-appellee.

Before LIVELY and ENGEL, Circuit Judges, and WEICK, Senior Circuit Judge.

ENGEL, Circuit Judge.

The sheriff of Oakland County, Michigan appeals from a judgment entered upon a jury verdict in favor of Caroline Dufrin. In

her action brought under 42 U.S.C. § 1983, Dufrin alleged that a visual body cavity search conducted at the Oakland County Jail during the late evening hours of October 10, 1978, violated her Fourth Amendment right to be free from unreasonable searches. The district judge directed a verdict in favor of plaintiff and against the defendant at the conclusion of six days of proof. Thereafter, the jury awarded Dufrin damages in the amount of $47,500. The issue on appeal is whether the strip search and body cavity inspection of Dufrin after her arrest violated her Fourth Amendment rights. We reverse and remand with directions to enter a judgment in favor of the defendants.

On October 10, 1978, Caroline Dufrin and her husband were arrested by West Bloomfield Township police on a warrant which charged that Caroline had assaulted her sixteen-year-old stepdaughter with a broom handle. After an earlier complaint and warrant were quashed by a judge of the Forty-Eighth Judicial District Court in Bloomfield Hills, Michigan, a second complaint and warrant were issued. On October 10, 1978, at approximately 11:00 p.m., the Dufrins were arrested at their home, taken into custody, and transported to the Oakland County Jail in Pontiac. Once at the jail they were allowed to remain in the public area for some time and to talk to their attorney. After being booked, Caroline Dufrin was escorted by an Oakland County sheriff's deputy to the female portion of the jail, where she was placed in the custody of a female jail attendant. The matron led Caroline into a small room and directed her to remove all of her clothes and place them in a bag. After Dufrin removed her clothing, the matron viewed her from the front, asked her to bend over, and then observed her from the rear. Thereafter, Dufrin was given a prison uniform and was conducted to a jail cell where she remained alone until she was discharged the following morning.

The evidence submitted at the six-day trial established that at the time of Dufrin's arrest and detention all female prisoners to be incarcerated in the Oakland County Jail were subjected to the type of search described above, regardless of the nature of the charges against them and regardless of the probability that they might be carrying contraband. The matron was not made aware of the specific charges against the prisoners committed to her custody.

The district judge directed a verdict in favor of Caroline Dufrin, after which the jury awarded her damages of $47,500 plus interest and costs, resulting in a final judgment of $55,899.

The trial judge relied on four cases in his oral opinion directing a verdict in favor of Dufrin: *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Sala v. County of Suffolk,* 604 F.2d 207 (2d Cir. 1979), *vacated and remanded,* 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980) (for further consideration in light of *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)); *Tinetti v. Wittke,* 479 F.Supp. 486 (E.D.Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980) (per curiam); *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied sub nom. Clements v. Logan,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

In *Sala v. County of Suffolk,* 604 F.2d 207 (2d Cir.1979), the female plaintiff was subjected to a strip search after her arrest for failure to respond to a court summons. The Suffolk County Sheriff's Department strip-searched every person delivered to the custody of the County's detention facility. 604 F.2d at 209. The Second Circuit affirmed the district court's directed verdict in favor of the individual defendants, holding that they had satisfied the two-part "good faith" test under *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), and were therefore entitled to official immunity in this § 1983 action for damages. 604 F.2d at 209. The court stated that the objective good faith prong of the *Procunier* test was satisfied because even if the strip search violated any of Sala's constitutional rights, these "rights were not 'clearly established' at the time of the search." *Id.* Moreover, since plaintiff did not allege that the sher-

iff's department acted with malice, the individual defendants also met the subjective good faith portion of the *Procunier* test.[1]

[1] The *Sala* Court commented that the search policy involved was "ill-considered" and "unfortunate," but it did not pass on the question of its constitutionality; the sole question decided in *Sala* was whether the individual defendants were entitled to "good faith" immunity.[2] Since the sheriff has not raised a "good faith" defense here, *Sala* need not detain us. "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

In *Tinetti v. Wittke,* 479 F.Supp. 486 (E.D.Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir. 1980) (per curiam), the female plaintiff was arrested for speeding, a non-misdemeanor traffic offense. The defendant sheriff had a policy of strip-searching all detainees, including those arrested for non-misdemeanor traffic offenses, and Tinetti was forced to submit to a strip search. These searches were conducted without regard to probable cause. The Seventh Circuit adopted the district court's opinion and affirmed its injunction enjoining the sheriff from conducting strip searches of persons charged with non-misdemeanor traffic offenses except where the sheriff has "probable cause to believe that contraband or weapons are being concealed on the person of the traffic violator." *Tinetti v. Wittke,* 620 F.2d at 161. In affirming the injunction, the Seventh Circuit found that the sheriff's blanket policy of strip searching all detainees violated the Fourth, Fifth, and Fourteenth Amendments. *Id.*

Finally, in *Logan v. Shealy, supra,* a § 1983 action seeking damages and declaratory and injunctive relief, the female plaintiff was arrested for driving while intoxicated and was transported by police to the Arlington County Detention Center. At the center, Logan was booked, and a strip search was conducted in a holding cell whose window blinds were either open or broken, thus permitting anyone in the booking area to observe the search. 660 F.2d at 1010. The district court granted directed verdicts in favor of defendants Arlington County, its sheriff, and deputy sheriff. 500 F.Supp. 502 (E.D.Va.1980).

On appeal, the Fourth Circuit held the sheriff's strip search policy unconstitutional under the standards laid out in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The circuit court emphasized several factors in determining that Logan's privacy rights outweighed the detention center's security needs:

1. Logan and similar detainees would not intermingle with the general jail population;

2. her offense, though not a minor traffic offense, was one not commonly associated with weapons or contraband;

3. there was no probable cause to believe that she possessed weapons or contraband; and

4. when Logan was strip-searched she had already been at the center for one and one-half hours, during which not even a pat-down search had been conducted.

660 F.2d at 1013. For these reasons, the Fourth Circuit reversed the district court's directed verdict in favor of defendants. The Supreme Court subsequently denied certiorari in the *Logan* case, *sub nom. Clem-*

---

1. In *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that government officials raising an immunity defense need satisfy only an objective good faith test and need not satisfy the subjective good faith test which *Procunier* also mandated.

2. As to the potential liability of the county, the Supreme Court vacated and remanded *Sala* for reconsideration in light of *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). *Owen* held that a municipality has no immunity from liability under § 1983 and that it may not assert the good faith of its officers as a defense to such liability.

*ents v. Logan,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).[3]

It is not necessary for us to determine whether *Tinetti* and *Logan* were correctly decided or should represent the law in this circuit. Although the district judge found the facts in the instant case "pretty much on all fours with the facts in *Tinetti* and in *Logan,*" it is enough to observe that their facts are clearly distinguishable from the undisputed facts before us. We conclude that this case falls squarely within the area which the Supreme Court in *Bell v. Wolfish* described as requiring "wide-ranging deference" to prison officials "in the adoption and execution of policies and practices . . . needed to preserve internal order and discipline and to maintain institutional security." 441 U.S. at 547, 99 S.Ct. at 1878.

The crucial facts with respect to the sheriff's conduct are:

1. Plaintiff, a female, was arrested for felonious assault, which under Michigan law is a felony and a class of crime of which violence is an element. Mich.Comp.Laws Ann. § 750.82.

2. The sheriff had a duty under Michigan law to accept and to confine Caroline Dufrin until he was properly relieved of that responsibility by her discharge. Mich. Comp.Laws Ann. § 801.1.

3. The jail conditions were such that, although Dufrin was a pretrial detainee and was placed in an individual cell, she would ultimately come into contact with the general jail population.

4. The search was visual only and was conducted by a female attendant.

5. The visual body cavity search occurred but once, and was conducted in the privacy of a room in which only the jail matron could observe the prisoner.

6. There is no claim of offensive behavior on the part of the matron or of anyone else in connection with the search, beyond that inherent in the nature of the inspection itself.

■ Upon the foregoing undisputed facts, we conclude as a matter of law that the conduct complained of was not improper under *Bell v. Wolfish* and that no factual dispute was raised necessitating resolution by a jury.

■ Several of the grounds for affirmance offered by Dufrin are irrelevant to the constitutionality of her strip-search or are relevant only to charges which could be brought against persons not parties to this lawsuit. For example, Dufrin complains that she was arrested late at night on a warrant which was issued for an offense allegedly committed two months earlier. Dufrin presented these claims against the West Bloomfield Township Police Department and several of its officers in an action for malicious prosecution and received a jury verdict of $156,288 with costs, postjudgment interest, and attorney fees.[4] No part of the circumstances giving rise to the malicious prosecution cause of action is chargeable in any way to the Oakland County Sheriff, however. It is not claimed that he had any legal duty or indeed any right to do other than accept custody of Dufrin when she was brought in by the West Bloomfield Township Police after her arrest. The sheriff was responsible neither for the issuance of the warrant nor for its execution at night. Moreover, he had no duty to determine whether the underlying facts justified the issuance of the warrant.

■ Dufrin makes no claim that a pretrial detainee charged with felonious assault must be segregated from the prison population as a whole. It is clear that prison officials need not distinguish be-

---

3. Prior to the Supreme Court's denial of certiorari in *Logan,* Justice Rehnquist, the author of *Bell v. Wolfish,* expressed his views on *Logan* in an opinion in chambers dealing with the detention center's application for a stay. 454 U.S. 1304, 102 S.Ct. 284, 70 L.Ed.2d 461 (1981). Justice Rehnquist found the *Logan* opinion totally "at odds" with the Supreme Court's opinion in *Bell,* 454 U.S. at 1309, 102 S.Ct. at 287, and stated that the court of appeals had given "little or no weight" to the "central objective" of institutional security. *Id.* at 1310, 102 S.Ct. at 288.

4. An appeal from that judgment was dismissed when the parties reached a settlement.

tween convicted inmates and pretrial detainees in reviewing their security practices. In *Bell v. Wolfish,* 441 U.S. at 546 n. 28, 99 S.Ct. at 1878 n. 28, the Supreme Court expressly noted that neither the Court of Appeals nor the District Court had distinguished between detainees and convicted inmates. It further observed that "there is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order." *Id.*

Another ground for affirmance offered by Dufrin is her proof at trial that the sheriff's department later changed its general rule on strip-searches to a more specific policy requiring body cavity searches of female detainees only where there was probable cause to believe that the detainee was carrying contraband. Although the trial judge had expressly excluded evidence of this policy change under Federal Rule of Evidence 407, it was nevertheless injected into the trial by Dufrin's attorney. Whether this evidence was or was not properly before the district court, we conclude that it did not create a jury question nor affect our legal conclusion here.[5]

The facts surrounding Dufrin's arrest and the events leading to her incarceration are also offered as reasons why the sheriff should not have conducted the type of search at issue. We cannot agree.

In directing a verdict for Dufrin, the trial judge observed that he did not like the idea of police routing "middle-class suburban housewives" out of their beds "at 11:30 at night" and forcing those housewives to submit to strip-searches. It was also brought out at trial that Dufrin was only about five feet tall, and that the sheriff's deputies viewed the charges brought against her with great skepticism. While all of this may be true, we do not believe that it imposes upon the sheriff the constitutional

duty to prohibit the type of search which occurred. We cannot believe from these comments that the trial court was implying that a different rule ought to exist for a female who was not middle-class, or who was not a housewife, or who was not from the suburbs. Any suggestion that a strip-search of a "middle-class suburban housewife" is unconstitutional but that such a search could be constitutional if conducted on a female not possessing the above characteristics is in our view neither legally nor morally supportable. We also find no legal or moral support for the implication that the quality of the search was affected by the fact that the matron was black, a circumstance which has been emphasized by appellee, unnecessarily in our opinion. The record reveals that the matron acted with unfailing professionalism.

Finally, Dufrin points out that the sheriff department's strip-search policy applied to all female detainees regardless of the crimes with which they were charged. Dufrin has cited several cases to this court in which blanket strip-search policies have been held unconstitutional. *See, e.g., Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied, sub nom. Clements v. Logan,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Tinetti v. Wittke,* 479 F.Supp. 486 (E.D.Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir. 1980) (per curiam). Review of the strip-search cases cited by Dufrin reveals that they have invariably involved misdemeanors, traffic offenses, or similar minor offenses not normally associated with weapons or contraband. *See, e.g., Logan, supra* (driving while intoxicated); *Tinetti, supra* (speeding, opinion specifically limited to non-misdemeanor traffic offenses).

■ *Bell v. Wolfish* provides adequate guidance in cases such as this, and it leads clearly to our conclusion that the conduct here fully comports with the requirements

---

**5.** Dufrin acknowledged that evidence of remedial measures taken after the fact is usually inadmissible because of the public policy to encourage improvements or corrections of unlawful or unsafe conditions. *See* Fed.R.Evid. 407 Advisory Committee Note. Nevertheless, Dufrin argued that the rule change was admissible to show that less intrusive procedures were feasible at the time of Dufrin's arrest. In view of our decision that the strip-search here was constitutional, it is unnecessary to explore Dufrin's less intrusive means argument.

of due process. Since this is a purely individual claim under § 1983, we are not asked—by declaratory judgment or otherwise—to make any rules of broad application or to lay down any bright line based upon the type of crime charged. It is enough here that (a) the arrestee was formally charged with a felony involving violence, (b) that her detention was under circumstances which would subject her potentially to mingle with the jail population as a whole, and (c) that the search actually conducted was visual only, and was carried out discreetly and in privacy. Where these circumstances exist, we do not believe that the sheriff is obliged, as a matter of federal constitutional law, to make a subjective evaluation of the underlying nature of the offense or to determine whether a less intrusive search may be employed. While changes in procedures may be laudable, the Supreme Court has counselled us to accord a wide-ranging deference to those in charge of correctional facilities, since they are best situated to decide the extent to which more liberal policies and practices may safely be adopted consistent with internal order, discipline, and security. *See Bell v. Wolfish,* 441 U.S. at 547, 99 S.Ct. at 1878.

Reversed and remanded with instructions to enter a judgment for the defendant.