Mark A. ARMSTRONG

v.

Officer Charles BORIE et al.

Civ. A. No. 75–1291.

United States District Court,
E. D. Pennsylvania.

July 29, 1980.

Marshall E. Kresman, Philadelphia, Pa., for plaintiff.

Stephen T. Saltz, Deputy City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Mark Armstrong, brought suit under 42 U.S.C. §§ 1983, 1985 and 1986 against two Philadelphia police officers, the then Police Commissioner, and the City of Philadelphia, alleging that his Constitutional rights were violated in that he was arrested without probable cause, beaten, and subjected to a strip search by the two police

officers. The plaintiff also raised pendent state tort law claims of false arrest and assault and battery. The case was tried before a jury on March 6, 7, 8, and 9, 1979. At the close of plaintiff's case, the Court granted a motion for directed verdict in favor of Commissioner O'Neill on all claims, and in favor of the City of Philadelphia on the federal claims. The jury returned a verdict on special interrogatories for all remaining defendants on the federal and state law claims. The plaintiff has moved for a new trial under Rule 59 of the Federal Rules of Civil Procedure setting forth the following grounds:

1. The jury's answers to special interrogatories were contrary to the evidence.

2. The jury's answers to special interrogatories were contrary to the overwhelming weight of credible evidence and the trial record.

3. The jury's answers to special interrogatories were contrary to the law.

4. The Learned Trial Judge committed prejudicial error in dismissing those charges against all of the defendants encompassed in Count II, 42 U.S.C. § 1985 at the close of plaintiff's case in chief.

5. The Learned Trial Judge committed prejudicial error in dismissing those actions against all of the defendants encompassed in Count III, 42 U.S.C. § 1986 at the close of plaintiff's case in chief.

6. The Learned Trial Judge committed prejudicial error in dismissing those allegations against the defendants City of Philadelphia and Joseph F. O'Neill contained in Count I, 42 U.S.C. § 1983 at the close of plaintiff's case in chief.

7. The Learned Trial Judge committed prejudicial error in dismissing all allegations against defendant Joseph O'Neill at the close of plaintiff's case in chief.

8. The Learned Trial Judge erred in failing to affirm plaintiff's point for charge No. 7 as to the duty of police officers from preventing other officers violating the civil rights of the plaintiff.

9. The Learned Trial Judge erred in failing to affirm plaintiff's point for charge No. 8 in that defendant Borie being a supervisory officer was liable for the acts of others under his command even if the jury did not believe that he personally struck plaintiff Mark A. Armstrong.

10. The Learned Trial Judge erred in failing to affirm plaintiff's point for charge No. 19 in that there was sufficient evidence for the jury to find a conspiracy existing between two or more persons and therefore such conspiracy charge should have been given.

11. The Learned Trial Judge erred in failing to question the jurors on Friday, March 9, 1979, as to whether their judgment on the liability issue would be affected by the fact that they would have to return for a subsequent trial on the damages sustained by the plaintiff. The Court made further error in not agreeing to inform the jury that if their judgment would be affected, one or more of the jurors could be discharged or an entire new jury could hear the damages issue.

12. The Learned Trial Judge erred in continuing to permit the defendants, over the numerous objections of the plaintiff, to question the plaintiff and other witnesses about plaintiff's involvement in the robbery of Melvin Suitley.

13. The Learned Trial Judge erred in permitting defense counsel to make closing argument and refer and conjecture as to the plaintiff's possible involvement in the robbery of Melvin Suitley.

14. The Learned Trial Judge erred in refusing to permit plaintiff to restrict the reading into testimony of the previous testimony of Victor Strong to those portions of Victor Strong's previous testimony relevant to the issues in this case. By reason of the Court's requirement that all of Victor Strong's testimony be read to the jury in this matter, those prejudicial matters dealing with conjecture as to plaintiff's participation of the robbery of Melvin Suitley were brought into issue before the jury.

15. And for such other reasons as may appear on detailed consideration and study of the entire record.

16. In the interest of fairness and justice and in light of the sum total effect of all the foregoing reasons on the ability of plaintiff Mark A. Armstrong to receive a fair and impartial non-prejudicial trial on the merits of his claim against each of the defendants.

## I. *Sufficiency of the Evidence.*

Plaintiff contends that there was insufficient evidence from which a jury could reasonably conclude that the defendants Borie and King did not violate plaintiff's Constitutional rights in connection with plaintiff's arrest, search, and alleged beating. The plaintiff claimed that he was arrested without probable cause for the robbery and assault and battery of Melvin Suitley. He testified that on the night of the robbery he was arrested while walking home from his girlfriend's house which was in the vicinity of the scene of the robbery. (N.T. 2.34–2.-37). He further testified that, after arriving at the police station, Officer Borie hit him in the face several times, threw him to the floor, and kicked him. (N.T. 2.46–2.47). The plaintiff also testified that Officer King grabbed him by the neck and pulled or dragged him. (N.T. 2.48). Finally, plaintiff testified that Officer King conducted a strip search during which plaintiff was required to stand for five to ten minutes naked and bent over. (N.T. 2.50).

■ In connection with the issue of probable cause for the arrest of Mark Armstrong, Officer King testified that he recognized Mark Armstrong as fitting the description of the person he had seen running from Melvin Suitley's home immediately after the robbery. (N.T. 3.146–3.147). Officer King testified that he detained the plaintiff outside Mr. Suitley's home and Mr. Suitley came out and identified him as one of the juveniles who had robbed and beaten him. (N.T. 3.151). Officer King further testified that he did not see anyone strike the plaintiff while he was at the police station. (N.T. 3.170). Officer Borie testified that he did not pull, drag, pinch, or kick Mr. Armstrong at any time. (N.T. 4.18). As to the strip search, Officer King testi-

fied that he conducted a strip search of plaintiff to determine whether the keys which were taken from Mr. Suitley's home were hidden on his body. He further testified that the entire search took about five minutes, from the time the plaintiff undressed until he redressed. Officer King testified that nothing was deliberately done during the search to humiliate the plaintiff, other than the procedures essential to the search, which are of necessity embarrassing. (N.T. 3.163–3.167). Officer Borie testified that he did not personally participate in the strip search, but that he agreed that it was necessary to make such a search for the missing keys. (N.T. 4.16). A search of a suspect subsequent to a lawful arrest is permissible and may include requiring him to remove his clothes, provided that the search is reasonably designed to detect hidden evidence, drugs, or objects which might be used to inflict harm on the suspect or others. A strip search may not, however, be performed as a pretext to humiliate or degrade the suspect. *United States v. Klein*, 522 F.2d 296, 300 (1st Cir. 1975). The Court so charged the jury.

■ It is clear, therefore, that the evidence presented by plaintiff was contradicted in every respect by defendant's testimony. Thus, the verdict depended on an assessment of the witnesses' credibility. Since the assessment of credibility is solely for the jury, it would be an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict. *Lewin v. Metropolitan Life Insurance*, 394 F.2d 608 (3d Cir. 1968); *Barrett v. Robinson*, 65 F.R.D. 652 (E.D.Pa.1975).

## II. *§ 1985 and § 1986 Claims.*

■ Plaintiff claims that it was error for the Court to grant a directed verdict as to his claims under 42 U.S.C. §§ 1985 and 1986. Section 1985 prohibits conspiracies "with an intent to deny to any citizen the equal protection of the laws . . .". Such a cause of action requires an allegation of a "class based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Novot-*

*ny v. Great Am. Federal Sav. & L. Ass'n,* 584 F.2d 1235 (3d Cir. 1978, en banc), *rev'd on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Plaintiff testified that the defendant Borie used racial epithets. (N.T. 2.44). However, this is, at most, evidence of an individual "discriminatory animus" on the part of Borie. There was absolutely no evidence from which the jury could have found the agreement or concert of action necessary to constitute a conspiracy. *See United Aircraft Corp. v. Boreen,* 413 F.2d 694 (3d Cir. 1969). Therefore, the defendants' motion for directed verdict was properly granted as to the § 1985 claim. Since a § 1986 claim requires knowledge of a § 1985 conspiracy, the motion for directed verdict was likewise properly granted.

### III. *City of Philadelphia and Joseph O'Neill.*

██ The plaintiff contends that it was error for the Court to grant a motion for directed verdict in favor of the City of Philadelphia and former Police Commissioner O'Neill at the close of plaintiff's case. There was absolutely no evidence that Commissioner O'Neill participated in or had knowledge of the events which were the subject of plaintiff's complaint. Personal involvement is essential to find an individual defendant liable under § 1983. *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Curtis v. Everette,* 489 F.2d 516 (3d Cir. 1974). Furthermore, since Commissioner O'Neill was not the employer of the individual police officers, he could not be held liable on a respondeat superior theory as to the state law claims. Therefore, his motion for directed verdict was properly granted. As to the City of Philadelphia, there was absolutely no evidence of municipal policy as required by *Monell, supra.* The motion for directed verdict as to the § 1983 claim was therefore properly granted. The City remained a defendant on the theory of respondeat superior as to the pendent state claims. (N.T. 3.106).

### IV. *Liability of Officers for Actions of Others.*

██ Plaintiff contends that it was error for the Court to fail to grant plaintiff's request to charge the jury that a police officer has the duty to prevent other police officers from violating plaintiff's civil rights. Specifically, he contends that the defendant Borie, as a supervisory officer, should be held liable for failing to stop the defendant King from conducting the strip search. Further, he claims that the defendant King should be held liable for failing to prevent the defendant Borie from beating the plaintiff. The Court refused to grant plaintiff's request as to Officer King because plaintiff's counsel stated on the record that his case against Officer King involved only the personal actions of King in connection with the arrest, strip search, and pulling or dragging of plaintiff. (N.T. 4.99). As to Officer Borie, the Court denied plaintiff's requested charge as to supervisory liability because it was based on a respondeat superior theory, which is not applicable. Furthermore, the jury, by their answers to interrogatories, found that Officer Borie did not beat the plaintiff, and that Officer King did not conduct an unlawful strip search. Therefore, there could have been no finding of liability on the basis of an officer's failing to prevent events which the jury found not to have occurred.

### V. *Bifurcated Trial.*

██ The plaintiff contends that it was error for the Court to fail to question the jurors as to whether their judgment on the liability issue would be affected by the fact that they would have to return for a subsequent trial on damages. Plaintiff's counsel was apparently concerned that the jurors, on the last day of their two weeks service, would favor the defense because it would enable them to go home earlier. The jurors were aware that their service was not limited to two weeks. (N.T. 4.4). Furthermore, plaintiff agreed to a bifurcated trial, with liability and damages tried separately. (N.T. 1.16–1.17).

VI. *Prior Testimony of Victor Strong.*

■ The plaintiff contends that the Court erred in permitting the entire testimony of Victor Strong to be read into the record, on the ground that it raised improper inferences about plaintiff's participating in the robbery and beating of Melvin Suitley. The plaintiff's involvement in the crimes against Mr. Suitley was not an issue in this case, and the Court so instructed the jury. (N.T. 4.180). The issue as to whether the arresting officers had probable cause to arrest plaintiff for such crimes was, however, an issue which plaintiff had placed before the jury. Evidence relevant to such probable cause determination was therefore properly introduced.

■ Plaintiff's witness Victor Strong was unable to appear at trial because he was out of the country on military duty. Plaintiff therefore introduced portions of Strong's direct testimony at prior trials as evidence, but objected to the reading into the record, during plaintiff's case, of the entire transcript of the prior proceedings, including the cross-examination of Strong. While Rule 32 of the Federal Rules of Civil Procedure concerns the use of depositions in court proceedings, it seems equally applicable to the use of sworn testimony given in a prior court proceeding rather than in a deposition. Rule 32 provides in pertinent part:

> (a) *Use of Depositions.* At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

> .   .   .   .   .

> (4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts.

In accordance with Rule 32(a)(4), the Court determined that, if plaintiff intended to introduce portions of Strong's testimony, the entire testimony "ought in fairness to be considered." Plaintiff argues, however, that certain portions of the cross-examination were not admissible under the Rules of Evidence, as required by Rule 32(a). Specifically, he objects to the introduction of three portions of the testimony of Victor Strong (N.T. 3–23, 3–61, 3–83), which related to plaintiff's involvement in the crimes against Melvin Suitley, on the ground that it was improper impeachment of plaintiff as to a collateral matter. Plaintiff ignores the fact that the prior cross-examination testimony of Victor Strong was introduced to impeach Victor Strong, not the plaintiff. If Victor Strong had testified in person, it would have been proper for the defendants to impeach his credibility by questioning him about a prior felony conviction, and by questioning him as to whether he had previously lied under oath in connection with the subject matter of his testimony. Since Victor Strong was not present in person for such questioning, it was proper to permit the introduction of the prior testimony concerning a prior conviction and lying under oath for impeachment purposes. Furthermore, it is difficult to see how the introduction of such testimony could prejudice plaintiff in connection with the crimes against Melvin Suitley, since Victor Strong denied that plaintiff was involved in such crimes. Finally, since we find nothing improper in the introduction of such evidence, we find nothing improper in the defendant's closing argument relating to the evidence.

Accordingly, plaintiff's motion for a new trial will be denied.