**Julie Ann GILES, Plaintiff,**

v.

**Richard (Dick) J. ACKERMAN, et al., Defendants.**

Civ. No. 81–4151.

United States District Court, D. Idaho.

Feb. 9, 1983.

Hopkins, French, Crockett & Springer, Larry L. Goins, Idaho Falls, Idaho, American Civil Liberties Union, Stephen L. Pevar, Denver, Colo., for plaintiff.

Lund & Associates, Lynn J. Lund, Salt Lake City, Utah, Fanning & Radin, John Radin, Idaho Falls, Idaho, for defendants.

MEMORANDUM DECISION

CALLISTER, Chief Judge.

Before the Court are cross-motions for summary judgment regarding plaintiff's claim of deprivation of constitutional rights arising out of the strip search conducted by Bonneville County Sheriff's employees on October 26, 1981. Plaintiff's complaint also alleges that the defendants failed to fully explain bail procedures following her arrest, but that issue is not addressed by the present motions.

The plaintiff in this action is a young, married woman. The gist of her complaint is that, when arrested pursuant to a warrant for failure to appear and pay parking tickets, Bonneville County authorities failed to adequately explain bonding procedures and conducted a strip search. The parties have stipulated to certain facts which have been filed of record. The parties have not asserted any material issues of fact involving the search of the plaintiff, and the Court finds, as the record reflects, that none exist. Fed.R.Civ.P. 56(c).

The starting point in any Fourth Amendment analysis is the standard of reasonableness. "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents . . . ." *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979).

The United States Supreme Court, in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1976), stated

[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884.

In *Bell,* the court further observed that

[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record, and in other cases.... That there has been only one instance where an MCC inmate was discovered attempting to smuggle contraband into the institution on his person may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of the inmates to secrete and import such items when the opportunity arises.

We do not underestimate the degree to which these searches may invade the personal privacy of inmates. Nor do we doubt, as the District Court noted, that on occasion a security guard may conduct the search in an abusive fashion. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner. But we deal here with the question whether visual body-cavity inspections as contemplated by the MCC rules can *ever* be conducted on less than probable cause. Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can.

*Id.,* at 559–60, 99 S.Ct. at 1884–85 (citations omitted).

The federal courts have at times sustained strip searches as a matter of routine, *see, e.g., Inmates of Allegheny Cty. Jail v. Pierce,* 612 F.2d 754 (3rd Cir.1979); *United States v. Klein,* 522 F.2d 296 (1st Cir.1975); *United States v. Bradford,* 496 F.Supp. 366 (D.Conn.1980), aff'd 645 F.2d 115 (2nd Cir. 1981); *Armstrong v. Borie,* 494 F.Supp. 902 (E.D.Pa.1980), and at other times have limited strip searches as a matter of routine. Often, the courts have ruled that the manner in which a strip search is conducted renders the search constitutionally impermissible.

In *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981) *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982), cited by the plaintiff, the court noted that the strip search was conducted in an improper manner because it was conducted in a place open to the view of people who might be passing by the window of the room where the search occurred. In *Tinetti v. Wittke,* 479 F.Supp. 486 (E.D.Wis.1979), also cited by plaintiff, the district court there felt that, under all the circumstances, the search of non-misdemeanor defendants charged with traffic offenses who were incarcerated because they could not post bond was not justified without some probable cause to believe that the arrestees might have weapons or contraband on their person. The court did not discuss the security problems of the jail or the problems facing the officers who managed the jail, but only the problems with the manner of the strip searches.

In this case, the plaintiff has not argued that the manner in which she was searched was unreasonable. No search was conducted until it was determined that the plaintiff did not intend to make bond, and that she would be entering the perimeter of the jail until her case came up for hearing. The Court notes that the search here did not include a cavity search and that issue is not before the Court; that the search was conducted in privacy and that there was no touching of the individual; and that every reasonable courtesy was extended to the plaintiff.

The Court recognizes that it is customary in this state, on all minor traffic violations, to permit the violator to sign the citation in agreement to appear at the time specified, and be released upon that signature. The Court also recognizes it is the practice to give those who are arrested on minor petty offenses the opportunity to post bond in a reasonable amount before they are processed or searched with regard to incarceration in the jail. In fact, Idaho has adopted a uniform bail schedule for misdemeanor offenses. Idaho Misdemeanor Criminal R.. 13.

The Court recognizes the unusual conditions of this case. The plaintiff was arrested on a warrant for failure to pay parking ticket violations. Plaintiff maintains that she was unaware that the tickets had been issued because her husband, who was driving the car at the time, allowed them to accumulate and neglected to pay them. Therefore, the Court views these circumstances as unusual, and they tend to arouse the sympathy of the Court as well as others concerned with this matter.

Nevertheless, there are other very serious considerations. Courts have long recognized the special dangers associated with jail and prison environments, even when faced with significant Fourth Amendment issues. As noted above, the Supreme Court has observed that "[a] detention facility is a unique place fraught with serious security dangers." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). Other courts have observed likewise and concluded that strip searches may reasonably assist in minimizing these dangers. "Jail authorities may reasonably act so as to exclude contraband from the jail environment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 761 (3rd Cir.1979).

> [W]e find no basis for agreeing . . . that the brief strip search . . . conducted without abuse and in a professional manner was unconstitutional. A post-arrest search of the person . . . may include requiring a suspect to remove his clothes and a visual inspection of his person. [citations omitted] . . . If such procedures were not permissible, it would often be difficult to conduct a thorough search for weapons and contraband."

*United States v. Klein*, 522 F.2d 296, 300 (1st Cir.1975). The court in *Klein* further concluded that "[t]he modesty of one lawfully arrested must give way to reasonable precautionary procedures designed to detect hidden evidence, drugs, or objects which might be used against others or to cause self-inflicted harm." 522 F.2d at 300–01. *See Armstrong v. Borie*, 494 F.Supp. 902, 905 (E.D.Pa.1980). In addition to the danger of drugs or contraband in a jail setting, jailers also face the possible problem of communicable diseases being spread in the institution.

In order to provide for jail security and safety, the Bonneville County Sheriff instituted a policy of strip searching every person processed into the general jail population area. The necessity of providing jail security is obvious. A weapon of any kind in the hands of an inmate can be a serious threat to other inmates, to the guards and jail personnel, and, in the event of an escape, to the general public. It is likewise true that placing a person with a serious communicable disease in close proximity to others in the crowded conditions of a jail can cause serious problems to inmates as well as to jail personnel. The presence of drugs in the jail may result in uncontrollable behavior by the user, thus presenting a danger to all others in the jail area.

The Court recognizes the chaotic situation which could result were the jail to adopt a policy of leaving the decision to strip search totally in the discretion of jail personnel. In a jail which processes approximately 4,000 people each year, such a procedure would certainly result in multiple litigation arising out of claims of unequal treatment of prisoners.

Plaintiff argues that strip searches of many traffic offenders are not justified by the need for jail security. This argument assumes that all traffic offenders are otherwise law-abiding people. The Court is of the opinion that arrested traffic offenders, as a group, could include people who have communicable diseases, people who use drugs and might be carrying them in concealed areas on their body, or people who use weapons and might be carrying them on their body. Traffic offenders cover the whole gamut of society. When it is necessary to arrest traffic offenders, and they must therefore enter the perimeter of the jail because they cannot make bond, it appears to this Court that the security of the jail requires that these persons be searched just as any other arrestee.

In reaching a decision on this issue, the Court also recognizes the right of the other

inmates in the jail to be protected from any danger that might result from an improper search allowing contraband of weapons or drugs, or communicable disease into the jail.

Perhaps the issue would be best resolved by legislatively imposed standards rather than judicial intervention into jails and prisons. Legislative bodies could pursue these matters after adequate investigation and debate, considering all aspects of the problem, unlike the Court which is limited to the matters in the record.

The Court notes that, although the law was not effective at the time this arrest and search occurred, Idaho recently enacted legislation which reduces the likelihood of arrest for many traffic violations. In 1982, the Idaho legislature passed the Idaho Traffic Infractions Act which creates a new classification of offense for many traffic violations. Idaho Code §§ 49–3401 to –3412 (effective March 1, 1983). The Act defines an infraction as "a civil public offense, not constituting a crime, which is punishable by a penalty not exceeding one hundred dollars ($100) and for which no period of incarceration may be imposed." Idaho Code 18–111. The Court recognizes that this decriminalization of many traffic offenses should reduce the possibility of arrest and pre-trial incarceration arising out of such minor offenses.

When all of these matters are considered, the Court is of the opinion that the search in this case did not violate the constitutional rights of the plaintiff. Accordingly, the defendants are entitled to summary judgment on that issue.