**Kristy FANN, Plaintiff,**

v.

**The CITY OF CLEVELAND, OHIO, et al., Defendants.**

**Civ. A. No. C83–4306.**

United States District Court,
N.D. Ohio, E.D.

July 8, 1985.

Carl J. Character, Cleveland, Ohio, for plaintiff.

Nick Tomino, Janet R. Beck, Kathleen A. Martin, Barbara Marsburger, Asst. Directors of Law, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Kristy Fann seeks damages under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for alleged violations of her constitutional rights during a strip search that occurred following her arrest by Cleveland police officers on August 13, 1983. Pending before the Court are cross-motions for summary judgment and myriad ancillary motions. For the reasons set forth below, the strip search of Fann was unconstitutional and she is entitled to partial summary judgment on the issue of liability with respect to certain defendants. Other defendants are entitled to summary judgment themselves under the doctrine of qualified immunity.

Jurisdiction rests on 28 U.S.C. § 1331 and 1343.

### I.

Fann's complaint, filed on October 25, 1983, alleges that following her arrest she was strip searched "without reason or cause to believe that weapons and/or contraband were being concealed on or about her body; while bond was being posted for her, and in violation of her constitutional rights." Complaint ¶ 1. She contends that she "was greatly embarrassed and humiliated, and suffered great emotional pain and distress," *id.* ¶ 8, because of a search which "deprived Plaintiff of the following rights, privileges and immunities preserved to her by the Constitution of the United States:

a. The right of plaintiff to be secure in her person against unreasonable search and seizure under the Fourth and Fourteenth Amendments of the United States Constitution;

b. The right of plaintiff to privacy in her person against unreasonable intrusion under the Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution;

c. The right of plaintiff not to be deprived of life, liberty or property without due process of law and the right to the equal protection of the law secured by the Fourteenth Amendment of the Constitution of the United States;

d. The right of plaintiff not to be subjected to cruel and unusual punishment under the Eighth and Fourteenth Amendments of the Constitution of the United States."

*Id.* at ¶ 13.

The defendants are the City of Cleveland ("the City"); Mayor George Voinovich; Safety Director Reginald Turner; Chief of Police William T. Hanton; two police officers, David Hoke and Sharon Dickerson; and unnamed police officers and an unnamed jail matron. In a proposed amendment to her complaint, Fann seeks to substitute as "named defendants" both "Unknown Jail Matorn [sic] Mary Pritchett" and "Unknown Policeman Andrew Lang." Each defendant (except the City) is sued both individually and in his or her official capacity.

Fann demands compensatory and punitive damages and attorney's fees.

### II.

Fed.R.Civ.P. 56(c) governs summary judgment motions and provides:

... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

The nature of materials properly presented in a summary judgment pleading is set forth in Fed.R.Civ.P. 56(e):

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 398 S.Ct. 144, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors, Inc.*, 729 F.2d 372 (6th Cir.1984). "[T]he party seeking summary judgment must *conclusively* show that there exists no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Bender v. Southland Corp.*, 749 F.2d 1205, 1210 (6th Cir.1984) (citing *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979)) (emphasis in original).

### III.

■ The following factual summary is based on the materials appended to the cross-motions for summary judgment and the defendants' opposition to Fann's motion: affidavits by Hanton, Hoke, Dickerson, and Pritchett, and Hanton's answers to interrogatories. The defendants have moved to strike that portion of Fann's motion designated "Statement of Fact" because it contains numerous unsworn allegations unsupported by the record. That motion is well-taken and is granted pursuant to Fed.R.Civ.P. 12(f), and this Court will examine only those facts found in the at-tached materials, rather than in Fann's motion itself.

On August 13, 1983, Officers Hoke and Dickerson stopped Fann's automobile and arrested her for allegedly disobeying a traffic signal and operating a vehicle without license plates. The arrest took place in the Third District, which has no detention facilities for holding prisoners, so the officers took Fann to the Central Prison Unit at 1300 Ontario Street in Cleveland for booking. After Fann was booked, Hoke escorted her from the booking officer, Lang, to the custody of a jail matron, Pritchett. According to defendants' answers to interrogatories, Fann

> ... was taken by Matron Pritchett to the corridor behind the female cell block and searched. Matron Pritchett offered the plaintiff the opportunity to make a telephone call. The matron took the plaintiff into the office to make out her prisoner record card. Plaintiff was placed in Cell No. 8. This conduct was taken pursuant to the standard arrest, booking procedures and matrons' duties in effect at the time under the authority of the Chief of Police.

The answers to interrogatories and Hanton's affidavit describe the search policy itself in greater detail. The latter states in part:

> 4. The booking procedures require every prisoner to be thoroughly searched during admission. All money, valuables and articles which might be used by prisoners to injure themselves and others or which can be used to damage the prison were to be confiscated and receipts given.
>
> 5. Jail matrons had the duty of conducting a thorough search of every female prisoner placed in their custody pursuant to booking.
>
> 6. The policy in effect on August 13, 1983, for jail matrons' conduct of searches was as follows: Searches were to be conducted in the matrons' lavatory or the corridor behind the female cell block, two private areas. No male officers were allowed in the matrons' office

or corridor area while a search was being conducted. Prisoners were required to pull up their brassiere and shake it, so as to permit any article secreted therein to fall out. Prisoners were required to lower any pants, pantyhose they were wearing, turn, and squat, thus causing any articles being concealed to fall to the floor. Pockets in clothing were to be turned out. Shoes and socks were to be shaken out. Purses and their contents were inspected, as well as any other belongings.

7. On August 13, 1983, I did not believe that the search policy described above caused violation of prisoners' constitutional rights.

In her affidavit, Pritchett states in part:

3. I searched Fann according to the procedures in effect on August 13, 1983.

4. In order to conduct that search, I took Fann to the corridor behind the women's cell block. No one was present in that area other than Fann and myself.

5. With Fann facing me, I asked her to hold her blouse up and to hold out her brassiere if she had one on. After she had done that, I asked her to lower her pants or shorts to the knees, and squat low.

6. After Fann had done that, I took her back to the matrons' office to finish her admitting processing. Then I placed her in Cell No. 8.

7. I did not visually inspect this female's vaginal or anal areas at any time. I did not touch her during this search.

### IV.

This Court begins by examining the constitutionality of the strip-search policy utilized by the City at the time of Fann's arrest.[1] If that policy is deemed to be invalid, various defendants assertions of immunity, and other objections to Fann's claims and pleadings, will then be examined.

Title 42 U.S.C. § 1983 provides

---

1. As the record indicates, the City's policy has been modified since Fann's arrest. Ohio Rev. Code § 2933.32, effective April 4, 1985, imposes stringent limitations on body cavity searches and strip searches. Section 2933.32(A)(2) provides this definition:

> "Strip search" means an inspection of the genitalia, buttocks, breasts, or undergarments of a person that is preceded by the removal or rearrangement of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, or undergarments and that is conducted visually, manually, by means of any instruments, apparatus, or object, or in any other manner while the person is detained or arrested for the alleged commission of a misdemeanor or traffic offense....

Section 2933.32(B) then sets forth these limitations:

> (1) Except as authorized by this division, no law enforcement officer, other employee of a law enforcement agency, physician, or registered nurse or licensed practical nurse shall conduct or cause to be conducted a body cavity search or a strip search.
> (2) A body cavity search or strip search may be conducted if a law enforcement officer or employee of a law enforcement agency has probable cause to believe that the person is concealing evidence of the tools of a crime, contraband, or a deadly weapon, as defined in section 2923.11 of the Revised Code, that

could not otherwise be discovered. In determining probable cause for purposes of this section, a law enforcement officer or employee of a law enforcement agency shall consider the nature of the offense with which the person to be searched is charged, the circumstances of the person's arrest, and, if known, the prior conviction record of the person.

> (3) A body cavity search or strip search may be conducted for any legitimate medical or hygienic reason.

> \*　\*　\*　\*　\*　\*

> (5) Unless there is a legitimate medical reason or medical emergency that makes obtaining written authorization impracticable, a body cavity search or strip search shall be conducted only after a law enforcement officer or employee of a law enforcement agency obtains a written authorization for the search from the person in command of the law enforcement agency, or from a person specifically designated by the person in command to give a written authorization for either type of search.

> (6) A body cavity search or strip search shall be conducted by a person or persons who are of the same sex as the person who is being searched and the search shall be conducted in a manner and in a location that permits only the person or persons who are physically conducting the search and the person who is being searched to observe the search.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To recover under § 1983, Fann must demonstrate that the undisputed facts prove that the strip search deprived her of a constitutionally protected right, that one or more of the defendants are legally responsible for that deprivation, and that such deprivation was the proximate cause of her injury. While federal courts traditionally have been reluctant to interfere with the operation of state prisons, they must hear and decide constitutional challenges to prison procedures and conditions. *Procunier v. Martinez,* 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *Kendrick v. Bland,* 740 F.2d 432 (6th Cir.1984). Constitutional challenges to strip searches have been addressed most frequently and appropriately under the Fourth and Fourteenth Amendment ban against unreasonable searches and seizures.[2] That aspect of Fann's summary judgment motion is therefore addressed first.

The Fourth Amendment provides that:

The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment prohibits only unreasonable searches. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.

543 (1925). To determine reasonableness, courts balance the legitimate governmental interests promoted by the search against the intrusiveness of the search on the individual. *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A frequently-quoted definition of reasonableness appears in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979):

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884. Determining the severity of "the invasion of personal rights" involves two judgments: "first that a person have exhibited an actual (subjective) expectation of privacy, and second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Security and Law Enforcement Employees, District Council 82 v. Carey,* 737 F.2d 187, 201 (2d Cir.1984).

Warrantless searches incident to arrest have been permitted to allow police to seize weapons which would enable arrestees to resist arrest or escape, and to prevent concealment or destruction of evidence. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 *reh'g denied,* 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969). In *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Court adopted a presumption that a "full search" incident to custodial arrest and aimed toward the discovery of weapons and contraband would be reasonable under the

---

**2.** The Fourth Amendment is enforceable against the states through the Fourteenth Amendment. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

Fourth Amendment, but warned that "extreme or patently abusive" searches might not be. 414 U.S. at 227–36, 94 S.Ct. at 473–77. *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), authorized warrantless searches of the clothing of arrestees who were confined overnight. As in *Robinson,* the court in *Edwards* reaffirmed that custodial searches incident to arrest must be reasonable. Neither *Robinson* nor *Edwards* specifically addressed "the circumstances in which a strip search of an arrestee may or may not be appropriate." *Illinois v. Lafayette,* 462 U.S. at 646 n. 2, 103 S.Ct. at 2609 n. 2.

In 1979, the Court did address the permissibility of strip searches of inmates in *Bell v. Wolfish.* Federal pretrial detainees at the Metropolitan Correctional Center in New York City challenged the propriety of visual body cavity searches. Noting that the detainees were being held on serious federal charges, recognizing that a detention center is a "unique place fraught with serious security dangers," 441 U.S. at 559, 99 S.Ct. at 1884, and considering the usefulness of searches in deterring the smuggling of weapons and contraband into the institution, the Court held that searches without probable cause could be conducted despite their undisputed intrusion on the detainees' privacy interests. *Id.* at 560, 99 S.Ct. at 1885.

None of these precedents is clearly controlling. In *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983), the Seventh Circuit held unconstitutional a municipal policy of strip searching women arrested for misdemeanor offenses. The court ruled that the "full searches" authorized by prior cases "simply did not contemplate the significantly greater intrusions that occurred here," *id.* at 1271, and stressed "that the balancing test prescribed in *Wolfish* does not validate strip searches in detention settings *per se.*" *Id.* at 1272. The court added:

... Although the majority in *Wolfish* did not uphold the strip searches conducted there on less than probable cause, the

detainees were awaiting trial on serious federal charges after having failed to make bond and were being searched after contact visits. In the cases before us, however, plaintiffs-appellees are minor offenders who were not inherently dangerous and who were being detained only briefly while awaiting bond. In light of the substantial nature of the intrusions involved, we believe these differences are sufficiently significant to compel our own inquiry as to whether the strip searches conducted by the City were "reasonable" under the fourth amendment.

*Id.* (footnotes omitted).

Examining the magnitude of the invasion of personal rights, the panel concluded that "we can think of few exercises of authority by the state that intrude on the citizen's privacy and dignity as severely as the visual anal and genital searches practiced here." Examining the City's contention that strip searches were necessary to maintain security in its lockups, the court found that "the evidence does not support the view that those dangers are created by women minor offenders entering the lockup for short periods while awaiting bail." *Id.* at 1273. Balancing these findings led the court to find insufficient basis "to justify the severity of the governmental intrusion." *Id.* It concluded its discussion of Fourth Amendment issues as follows:

Balancing the citizen's right to be free from substantial governmental intrusions against the mission of law enforcement personnel to ensure a safer society is often a difficult task. While the need to assure jail security is a legitimate and substantial concern, we believe that, on the facts here, the strip searches bore an insubstantial relationship to security needs so that, when balanced against plaintiffs-appellees' privacy interests, the searches cannot be considered "reasonable." ... The reasonableness standard usually requires, "at a minimum, that the facts upon which an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test." ...

The more intrusive the search, the closer governmental authorities must come to demonstrating probable cause or believing that the search will uncover the objects for which the search is being conducted.... Based on these principles, we agree with the district court ... that ensuring the security needs of the City by strip searching plaintiffs-appellees was unreasonable without a reasonable suspicion by the authorities that either of the twin dangers of concealing weapons or contraband existed....

*Id.* (citations omitted).

As defendants acknowledge, *Mary Beth G.* is one of a number of cases invalidating visual body cavity searches of persons arrested for minor offenses. *See, e.g., Hill v. Bogans,* 735 F.2d 391 (10th Cir.1984); *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Sala v. County of Suffolk,* 604 F.2d 207 (2d Cir.1979), *vacated and remanded on other grounds,* 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980); *Tinetti v. Wittke,* 479 F.Supp. 486 (E.D. Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980) (per curiam); *Security and Law Enforcement Employees v. Carey.* They submit, however, that the Sixth Circuit rejected limitations on strip searches in *Dufrin v. Spreen,* 712 F.2d 1084 (6th Cir.1983), and further maintain that no case has invalidated a policy which—like the one in question here—involved neither touching nor visual inspection of the arrestee during the strip search. Both arguments fail to persuade.

In *Dufrin,* the court reversed a district court judgment under § 1983 in favor of a woman who was subjected to a visual body cavity search following her arrest on a felony charge. The court discussed *Sala, Logan* and *Tinetti* but found them inapplicable in the felony context because they "involved misdemeanors, traffic offenses, or similar minor offenses not normally associated with weapons or contraband." *Id.* at 1088. It left the constitutionality of strip searches under those circumstances to another day, stating:

... Since this is a purely individual claim under § 1983, we are not asked—by declaratory judgment or otherwise—to make any rules of broad application or to lay down any bright line based the type of crime charged. It is enough here that (a) the arrestee was formally charged with a felony involving violence, (b) that her detention was under circumstances which would subject her potentially to mingle with the jail population as a whole, and (c) that the search actually conducted was visual only and was carried out discreetly and in privacy. Where these circumstances exist, we do not believe that the sheriff is obliged, as a matter of federal constitutional law, to make a subjective evaluation of the underlying nature of the offense or to determine whether a less intrusive search may be employed....

*Id.* at 1089.

The constitutional issue left unanswered in *Dufrin* must now be decided. Defendants suggest that because the record demonstrates neither touching nor visual examination of Fann's vaginal or anal areas during the search, the City's policy was appropriate under *Giles v. Ackerman,* 559 F.Supp. 226 (D.Idaho 1983), and is distinguishable from the policies declared unconstitutional in the cases discussed above. The *Giles* ruling, however, was reversed by the Ninth Circuit in *Giles v. Ackerman,* 746 F.2d 614 (9th Cir.1984) (per curiam), *cert. denied,* —— U.S. ——, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985), and the appellate decision enunciates a clear and appropriate "bright line" constitutional rule concerning all strip searches following minor offenses:

... Balancing [the jail's security] interest against the privacy interests of arrestees, we hold that arrestees may be subjected to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband. Reasonable suspicion may be based on such factors as the nature of the offense, the arrestee's ap-

pearance and conduct, and the prior arrest record....

*Id.* at 617 (citations omitted).

 This ruling, citing *Mary Beth G., Logan* and *Tinetti* and an appropriate extension of their holding, is a proper rule to be applied in this case. Because the record indicates that Fann was strip-searched following arrest for minor offenses and that no police officer possessed any reasonable suspicion that she was carrying or concealing contraband, her Fourth and Fourteenth Amendment rights were violated.[3]

### V.

Having determined that Fann's constitutional rights were violated, this Court must determine which defendants are subject to liability.

#### A. *City of Cleveland*

Municipal bodies, including counties, are not immune from § 1983 actions. *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Owen v. City of Independence, Missouri,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). But under *Monell* and its progeny, a municipal entity cannot be held liable solely on a respondeat superior theory.

... Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every oth-

er § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels....

*Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. *Hays v. Jefferson County,* 668 F.2d 869, 873 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *id.* at 876 (Merritt, J., dissenting); *Dunn v. State of Tennessee,* 697 F.2d 121, 128 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983); *see Rowland v. Mad River Local School Dist. Montgomery County, Ohio,* 730 F.2d 444, 451 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1373, 84 L.Ed.2d 392, *reh'g denied,* —— U.S. ——, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985); *Taylor v. Canton, Ohio Police Dept.,* 544 F.Supp. 783, 788 (N.D.Ohio 1982).

 The Supreme Court now has reaffirmed that *"Monell's* 'policy or custom' requirement ... was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Here, however, there is no dispute but that the matron was implementing an established City policy and custom when she conducted the strip search of Fann. Accordingly, the City is liable under § 1983 for the deprivation of Fann's constitutional rights. Such liability cannot be negated by a claim of good faith immunity, which is unavailable to municipalities under *Owen.*

#### B. *Voinovich and Turner*

The Sixth Circuit has recently reiterated that

.. the § 1983 liability of supervisory personnel must be based on more than the

---

**3.** In light of its obligation not to decide unnecessary constitutional issues, *Lowe v. Securities and Exchange Commission,* —— U.S. ——, ——, 105 S.Ct. 2557, 2563, 86 L.Ed.2d 130 (1985); *Escambia County, Florida v. Millan,* 466 U.S. 48, 104 S.Ct. 1577, 80 L.Ed.2d 36 (1984); *Ashwander v.*

*Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), this Court declines to decide whether there is any validity to Fann's claims under the Fifth, Eighth and Ninth Amendments.

right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.) (citing *Hays v. Jefferson County*, 668 F.2d at 872–74), *cert. denied*, — U.S. —, 105 S.Ct. 156 (1984), 83 L.Ed.2d 93; *Smith v. Heath*, 691 F.2d 220, 225 (6th Cir.1982).

■ Since there is no evidence in the record of any authorization, approval or acquiescence by Mayor Voinovich or Safety Director Turner in the strip search challenged here, summary judgment is entered in their favor.

## C. *Hanton and Police and Jail Officers*

Police officers are entitled to qualified or "good faith" immunity from suits for damages arising out of their official acts. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), clarified the circumstances under which a trial court may enter summary judgment for a defendant based upon a claim of qualified immunity:

... [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.... Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the cur-

rently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful....

457 U.S. at 818, 102 S.Ct. at 2738 (citations and footnotes omitted). Decisions since *Harlow* have stressed that "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct in issue." *Davis v. Scherer*, — U.S. —, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139, *reh'g denied*, — U.S. —, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984); *Mitchell v. Forsyth*, — U.S. —, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

■ In light of the Sixth Circuit's *Dufrin* ruling, and the fact that many of the crucial rulings on the unconstitutionality of strip searches under the circumstances present here are of relatively recent vintage, this Court believes that the law was not clearly established at the time of Fann's arrest and strip search on August 13, 1983. *See Kathriner v. City of Overland, Missouri*, 602 F.Supp. 124, 125 (E.D. Mo.1984); *Bovey v. City of Lafayette, Indiana*, 586 F.Supp. 1460, 1472 (N.D.Ind. 1984). Accordingly, summary judgment is entered in favor of Hoke, Dickerson, and unnamed defendants, and in favor of Hanton with respect to all claims against him in his individual capacity. Since he is a supervisory official, however, Hanton's actions in his official capacity must be "clearly equated ... with the actions of the City itself," *Brandon v. Holt*, — U.S. —, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985), and like the City he is not entitled to immunity under *Owen*. As a practical matter, since *Brandon* presumes "that a judgment against a public servant 'in his official ca-

pacity' imposes liability on the entity that he represents," *id.*, the City must pay any judgment levied against Hanton in his official capacity. *See also Kentucky v. Graham,* —— U.S. ——, ——, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon ...*"); *id.* at ——, 105 S.Ct. at 3108. Moreover, punitive damages are not available against either remaining defendant, *City of Newport v. Facts Concert, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Brandon,* and the claim for them is stricken.

■ Still pending before the Court is Fann's motion for leave to amend her complaint to include claims against Pritchett and Lang. Because those defendants would be entitled to summary judgment based upon qualified immunity, the motion is denied.

### VI.

Partial summary judgment on the issue of liability is entered in favor of Fann against the City and against Hanton in his official capacity. Summary judgment is entered in favor of defendants Voinovich, Turner, Hoke, Dickerson, unnamed defendants, and Hanton in his individual capacity. Trial on the issue of damages is scheduled for August 5, 1985 (backup trial) and a status call is scheduled for July 22, 1985 at 4:30 p.m.

Defendants' motion to compel answers to interrogatories is denied as moot pursuant to Fann's having answered those interrogatories. Defendants' motion for a protective order quashing notices to take depositions scheduled beyond the discovery cutoff in this case is granted. Defendants' motion for leave to file reply brief on the statute of limitations issue is denied as moot given the subsequent dispositive holding in *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

IT IS SO ORDERED.